**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| NIPPON SANSO MATHESON, INC., ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. _____ |
| ) | |
| ERIK M. MISKIN  and MAINE OXY- ) | |
| ACETYLENE SUPPLY COMPANY, ) | |
| ) | |
| **Defendants.** ) | |

**COMPLAINT**
(Injunctive Relief Requested)

Plaintiff Nippon Sanso Matheson, Inc. ("Matheson") complains against Defendants

Erik M. Miskin ("Miskin") and Maine Oxy-Acetylene Supply Company ("Maine Oxy"), as

follows:

**NATURE OF THE ACTION**

1.      This is an action for violations of federal and state trade secrets law, breach

of contract, and breach of duty of loyalty arising from Defendants' wrongful acquisition,

retention, and threatened or actual use of Matheson's confidential and proprietary business

information, including trade secrets. Matheson seeks immediate and preliminary injunctive

relief prohibiting Defendants from accessing, using, or disclosing its confidential and trade

secret information and other remedies.

**PARTIES**

2.      Plaintiff Nippon Sanso Matheson, Inc. is a U.S.-based supplier of industrial,

medical, specialty, and electronics gases, along with gas handling equipment, onsite air

separation plants, and engineering services to key end markets such as manufacturing,

1

25720291.6

semiconductors, healthcare, and energy. It is incorporated in Delaware and headquartered in Irving, Texas, with customers across the U.S., including in Maine.

3.     Defendant Maine Oxy-Acetylene Supply Company is a competing supplier of gases, gas handling equipment and related services to markets that overlap with those served by Matheson, including in Maine. Maine Oxy is a Maine business corporation with a principal place of business in Auburn, Maine.

4.     Defendant Erik M. Miskin is an individual residing in Gray, Maine. Miskin was employed by Matheson for over 20 years and most recently served as a Regional General Manager, a senior leadership role with responsibility for sales, operations, profitability, customer relationships, and financial performance within the region. Defendant Miskin now works for Maine Oxy.

## JURISDICTION AND VENUE

5.     This Court has original jurisdiction under 28 U.S.C. § 1331 because Count I arises under the Defend Trade Secrets Act, 18 U.S.C. § 1836. Pursuant to 18 U.S.C. § 1836(c), "[t]he district courts of the United States shall have original jurisdiction of civil actions brought under this section."

6.     This Court also has jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship among the parties.

7.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred in this District, because Defendants reside in or are subject to personal jurisdiction in this District, and because the trade secrets and customer relationships at issue concern business activities in Maine.

2

8.      This Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as the federal claim.

**FACTUAL ALLEGATIONS**

9.      Matheson develops and maintains highly confidential and proprietary business information, including detailed financial data, profit-and-loss information, margins, pricing structures, supply volumes, customer contracts, and strategic business plans. This information derives independent economic value from not being generally known and provides a competitive advantage in the marketplace.

10.      Matheson takes reasonable measures to protect this information from public disclosure and use by competitors, including by requiring confidentiality agreements, limiting access to a need-to-know basis, maintaining the information on secure information technology systems, including use of password protections, access controls, user permission levels, audit logs, and policies restricting employees' ability to collect, use, and retain Matheson's confidential information.

11.      Matheson employees agree to abide by a Code of Conduct on an annual basis. Section VI.B of the Code of Conduct provides that when handling confidential financial and other non-public, proprietary information, employees must collect, use, and retain such information only as necessary for Matheson's business, and access must be limited to only those with a legitimate business reason or having such information. Employees must not disclose the information to business parters, suppliers, customers, or any outside party. The Code of Conduct is explicit that "Upon termination of employment, employees may not copy, take, download or retain any documents or electronic media containing proprietary

3

confidential information." This prohibition extends indefinitely and "is considered an important condition of" each employee's employment with Matheson.

12. Miskin signed the Code of Conduct annually throughout his employment with Matheson. His review and agreement to the Code of Conduct is documented electronically by Matheson records maintained in the regular course of business, as follows:



13. As a condition of employment, Miskin executed a Confidentiality Agreement and Covenant Not to Compete or Solicit dated January 11, 2010 (the "Agreement"). The Agreement prohibits the use, disclosure, or removal of Matheson's confidential information and prohibits solicitation of Matheson customers and employees following separation. By its terms, the Agreement remains in effect following Miskin's separation from employment.

14. In his role as a Regional General Manager at Matheson, Miskin had access to Matheson's confidential and proprietary business information, including detailed financial information, budgets, profit-and-loss reports, customer agreements, pricing-related materials, strategic plans, employee compensation and incentive information, and internal operational documents.

15. On or about March 13, 2026 and April 6, 2026, Miskin exported more than 2,000 confidential business files from Matheson's systems to a personal external storage device.

25720291.6

16.     The files exported included customer contracts and pricing agreements, detailed financial reports, P&L data, budgets, cost structures, compensation data, and strategic and operational materials.

17.     Many of these files were stored in restricted-access systems and could only be accessed and copied through affirmative navigation of protected internal locations.

18.     The volume, timing, and concentration of the files reflect a bulk extraction of high-value business information inconsistent with ordinary work activity.

19.     Miskin had no legitimate business reason and no authorization to copy or export this volume or type of information to external storage.

20.     The categories of information taken—particularly detailed financial and strategic materials—have no independent use outside Matheson, except for use in competition against Matheson.

21.     Within weeks after exporting the files, on April 24, 2026, Miskin abruptly resigned from Matheson, effective the same day he gave notice. He did not disclose his intention to join a competitor.

22.     Matheson discovered Miskin's bulk extraction of company confidential files and information only after conducting an internal forensic analysis of Miskin's network activity following his resignation.

23.     In the weeks following his resignation, Matheson received reports that Miskin had begun working for Maine Oxy, a direct competitor operating in overlapping markets. Based on accounts by Matheson sales employees, multiple Matheson customers with whom Miskin had responsibility while employed at Matheson have reported that

25720291.6

Miskin has solicited their business and that he has held himself out as a representative of Maine Oxy.

24.    Miskin's unauthorized access to and removal of Matheson's confidential information, combined with his role at a direct competitor and his solicitation of Matheson customers, creates a substantial likelihood and imminent and ongoing risk that he and Maine Oxy are now using or will use Matheson's trade secrets to compete unfairly and in breach of Miskin's obligations to Matheson.

25.    The information taken by Miskin constitutes the "crown jewels" of Matheson's business and provides a comprehensive roadmap of its pricing strategies, cost structures, margins, customer relationships, and internal decision-making.

26.    Use or disclosure of this information would enable a competitor to undercut Matheson's pricing, target its most valuable customers, and anticipate its strategic decisions.

27.    Matheson has demanded that Miskin return all company property and certify that he has not retained or used any confidential information, but he has failed to provide adequate assurances. Although Miskin has claimed that he understands his contractual obligations and says that he has not shared information outside Matheson, he has not denied that he took the information, and that he retains possession of the information and access to it. He has failed to acknowledge that he has joined a competitor and has solicited Matheson customers.

28.    The unauthorized removal and threatened use of Matheson's confidential and proprietary information has caused and continues to cause immediate and irreparable harm to Matheson.

6

25720291.6

29.     The ongoing disclosure and use of Matheson's confidential information has caused and is causing loss of competitive advantage, customer trust, harm to goodwill, and lost business opportunities cannot be fully remedied by monetary damages.

30.     Absent immediate injunctive relief, Matheson faces ongoing and escalating harm, including loss of customers and unfair competition in the marketplace.

### COUNT I - DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836)
(Against Miskin and Maine Oxy)

31.     Matheson repeats and incorporates by reference the above paragraphs of this Complaint.

32.     The information described above constitutes trade secrets within the meaning of 18 U.S.C. § 1839(3) because it includes financial, business, economic, and commercial information that derives independent economic value from not being generally known or readily ascertainable by proper means and that Matheson has taken reasonable measures to keep secret.

33.     The trade secrets at issue are related to products and services used in, or intended for use in, interstate commerce.

34.     Miskin misappropriated Matheson's trade secrets by acquiring them through improper means and by copying, exporting, retaining, and using and disclosing or threatening to use or disclose them without Matheson's consent.

35.     At all relevant times, Miskin acted as an employee, agent, and representative of Maine Oxy and within the course and scope of his employment and agency. Upon information and belief, Miskin acquired, retained, disclosed, used, and/or intended to use Matheson's trade secrets and confidential information in furtherance of Maine Oxy's business and for the purpose of benefiting Maine Oxy. Accordingly, Maine Oxy is liable for

7

25720291.6

Miskin's acts and omissions under the doctrine of respondeat superior and other applicable principles of agency law.

36.    Matheson's trade secrets were willfully and maliciously misappropriated, and the misappropriation was made in bad faith.

37.    The misappropriation has caused and will continue to cause Matheson immediate and irreparable injury.

38.    Matheson is entitled to injunctive relief, damages, exemplary damages for willful and malicious misappropriation, and attorney fees.

### COUNT II - MAINE UNIFORM TRADE SECRETS ACT (10 M.R.S. §§ 1541-1548)
(Against Miskin and Maine Oxy)

39.    Matheson repeats and incorporates by reference the above paragraphs of this Complaint.

40.    The information described above constitutes trade secrets within the meaning of 10 M.R.S. § 1542(4) because it derives independent economic value from not being generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use and because it is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

41.    Miskin acquired, copied, retained, and threatens to use or disclose those trade secrets through improper means and in breach of duties of confidentiality and restricted use.

42.    On information and belief, Maine Oxy has acquired, received, used, disclosed, possessed, or threatens to use or disclose Matheson's trade secrets knowing, or having reason to know, that the trade secrets were acquired by improper means or under circumstances giving rise to a duty to maintain secrecy or limit use.

25720291.6

43.     Defendants' conduct constitutes actual and/or threatened misappropriation under 10 M.R.S. § 1542(2).

44.     Matheson's trade secrets were willfully and maliciously misappropriated, and the misappropriation was made in bad faith.

45.     Matheson has suffered damages and is entitled to injunctive relief, damages, exemplary damages, and attorney fees.

### COUNT III - BREACH OF CONTRACT: CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT
(Against Miskin)

46.     Matheson repeats and incorporates by reference the above paragraphs of this Complaint.

47.     Matheson and Miskin entered into a valid and enforceable written Confidentiality Agreement and Covenant Not to Compete or Solicit.

48.     Matheson performed its obligations under the Agreement.

49.     Miskin breached the Agreement by, among other things, copying, exporting, retaining, and failing to return Matheson confidential information, by using or threatening to use or disclose such information for non-Matheson purposes, and by soliciting or threatening to solicit Matheson customers and/or employees.

50.     Miskin has also breached the Agreement by engaging in competitive activity prohibited by the Agreement.

51.     Matheson has suffered and will continue to suffer damages as a result of Miskin's breaches and is entitled to injunctive and monetary relief.

9

25720291.6

## COUNT IV - BREACH OF CONTRACT: CODE OF CONDUCT
(Against Miskin)

52.     Matheson repeats and incorporates by reference the above paragraphs of this Complaint.

53.     As a condition of employment, Miskin agreed to Matheson's Code of Conduct on an annual basis throughout his employment, including in 2025.

54.     Section VI.B of the Code of Conduct provides that when handling confidential financial and other non-public, proprietary information, employees must collect, use, and retain such information only as necessary for Matheson's business, and access must be limited to only those with a legitimate business reason or having such information. Employees must not disclose the information to business parters, suppliers, customers, or any outside party.

55.     The Code of Conduct is explicit that "Upon termination of employment, employees may not copy, take, download or retain any documents or electronic media containing proprietary confidential information."

56.     This prohibition extends indefinitely and "is considered an important condition of" each employee's employment with Matheson.

57.     The Code of Conduct constitutes a valid and enforceable agreement.

58.     Miskin breached the Code of Conduct by, among other things, copying, exporting, retaining, and failing to return Matheson confidential information, and by using or threatening to use or disclose such information for non-Matheson purposes.

59.     Matheson has suffered and will continue to suffer damages as a result of Miskin's breaches and is entitled to injunctive and monetary relief.

25720291.6

## COUNT V - BREACH OF DUTY OF LOYALTY
(Against Miskin)

60.    Matheson repeats and incorporates by reference the above paragraphs of this Complaint.

61.    While employed by Matheson, Miskin owed Matheson duties of loyalty, honesty, good faith, confidentiality, and fair dealing.

62.    Miskin breached those duties while still employed by Matheson by copying and exporting large volumes of Matheson's confidential and proprietary information to an external USB device for non-Matheson purposes and to Matheson's detriment.

63.    Miskin further breached those duties by acting in anticipation of competitive employment or activity adverse to Matheson while still employed by Matheson.

64.    As a direct and proximate result of Miskin's breach of duty of loyalty, Matheson has suffered and will continue to suffer damages and irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Nippon Sanso Matheson, Inc. respectfully requests that the Court enter judgment in its favor and against Defendants, and those acting in concert with them, by:

A.    Issuing temporary, preliminary, and permanent injunctive relief enforcing Matheson's rights regarding its trade secrets and confidential business information, including by prohibiting Defendants from accessing, using, copying, opening, distributing, disclosing, transmitting, retaining, destroying, altering, or benefiting from any Matheson trade secrets or confidential information;

B.    Ordering Defendants to immediately return to Matheson all Matheson confidential information, trade secrets, documents, files, devices, media, and property in

11

25720291.6

their possession, custody, or control, and to identify all locations, accounts, devices, media, and repositories where such information resides or has resided;

C. Ordering appropriate forensic preservation, imaging, inspection, and sequestration of devices, accounts, storage media, and repositories containing or likely to contain Matheson information, including any external storage devices and any devices or accounts used to access, store, transmit, or use such information;

D. Enjoining Miskin from soliciting Matheson customers and employees in violation of contractual or legal obligations;

E. Awarding Matheson its actual damages in an amount to be determined at trial;

F. Awarding attorney fees and costs;

G. Awarding exemplary damages;

H. Awarding pre-judgment and post-judgment interest; and

I. Granting such other and further relief as the Court deems just and proper.

Dated at Portland, Maine this 2nd day of June, 2026.

Respectfully submitted,

*/s/ Sigmund D. Schutz*

Sigmund D. Schutz, Esq.
Alexandra Harriman, Esq.
PRETI FLAHERTY BELIVEAU & PACHIOS, LLP
One City Center, P. O. Box 9546
Portland, ME  04112-9546
(207) 791-3000
sschutz@preti.com
aharriman@preti.com

*Counsel for Nippon Sanso Matheson, Inc.*

12

25720291.6