UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| NIPPON SANSO MATHESON INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    2:26-cv-00290-SDN |
| | ) |
| ERIK M. MISKIN & MAINE | ) |
| OXY-ACETYLENE SUPPLY COMPANY, | ) |
| | ) |
| Defendants. | ) |

**ORDER ON PLAINTIFF'S MOTIONS FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

On June 2, 2026, Plaintiff Nippon Sanso Matheson, Inc. ("Matheson") filed this action alleging several violations of federal and state law against Mr. Erik Miskin and Maine Oxy-Acetylene Supply Company ("Maine Oxy") related to confidential business information which Mr. Miskin allegedly misappropriated from Matheson and which violated the Defend Trade Secrets Act, 18 U.S.C. § 1836. ECF No. 1. That same day, Matheson filed an ex parte motion under seal for a temporary restraining order ("TRO") and preliminary injunction, ECF No. 4, which the Court denied to the extent the motion asserted an emergency TRO, ECF No. 8. On June 10, 2026, Plaintiff filed a verified First Amended Complaint ("FAC"), alleging many of the same trade secrets claims as well as enforcement of its noncompete and non-solicitation agreements. ECF No. 15. On June 23, 2026, Plaintiff filed an amended motion for a TRO and preliminary injunction, ECF No. 20, which Defendants oppose, ECF No. 24. The parties jointly waived an evidentiary hearing and instead appeared for oral argument on the motions on July 8, 2026. ECF No. 33. At that hearing, the parties agreed that the Court should treat the motions under the preliminary injunction standard rather than as a request for TRO relief.

1

## FACTUAL BACKGROUND[1]

Matheson supplies industrial, medical, specialty, and electronics gases and other related services in the United States. FAC ¶ 2. The company is incorporated in Delaware and headquartered in Irving, Texas, with customers and office locations in Maine. *Id.* Maine Oxy is a competing supplier of gases and related services with markets in Maine. *Id.* ¶ 3. It is incorporated in Maine with a principal place of business in Auburn, Maine. *Id.*

Mr. Miskin lives in Gray, Maine, and worked for Matheson for more than twenty years. *Id.* ¶ 4. In 2022, Matheson promoted him to Regional General Manager for the Northeast region. *Id.* As a condition of the promotion, he and the company executed a "Covenant Not to Compete, Confidentiality, and Intellectual Property Protection Agreement" ("2022 Agreement"). *Id.* ¶ 11; *see* ECF No. 15-1. The Agreement imposed certain conditions, including a requirement that the employee return company documents and property if his employment terminates, *id.* § 3; a noncompete agreement that applies to the twelve months following the termination of employment that prohibits the employee from competing, directly or indirectly, within 100 miles of any Matheson location, *id.* § 4(a), *id.* at 7; and a non-solicitation agreement that prohibits "solicit[ing] business from, or attempt[ing] to sell, license or provide the same or similar products or services" to any "then-present customer" of the company within the twelve months after termination of employment, *id.* §§ 4(b), 4(c). It also has a clause disallowing disclosure of confidential or proprietary information. *Id.* § 4(f).

---

[1] The Court recites the facts from the verified First Amended Complaint and assumes their truth for the purposes of this Order, making note where the parties disagree. *See Alcom, LLC v. Temple*, No. 20-cv-00152, 2020 WL 2202443, at *1 (D. Me. May 6, 2020). The Court also draws facts from counsels' representations at the July 8 oral argument.

Matheson's FAC also asserts that Mr. Miskin signed a "Confidentiality Agreement and Covenant Not to Compete or Solicit" ("2010 Agreement") on January 11, 2010. ECF No. 15 ¶ 19; *see* ECF No. 15-2. The 2010 Agreement prohibits the sharing of confidential information and states the "[e]mployee acknowledges and agrees that the Confidential Information are valuable, special, and unique assets of [Matheson], the disclosure of which could cause substantial injury and loss of profits and good will to [Matheson]." *Id*. § 1(c). It further provides it should be governed by the laws of the State of Texas. *Id*. § 7.

Finally, the FAC asserts Mr. Miskin signed an annual Code of Conduct which states "[u]pon termination of employment, employees may not copy, take, download or retain any documents or electronic media containing proprietary confidential information." ECF No. 15 ¶ 86; *see* ECF No. 15-3 at 8;. The prohibition purports to extend "indefinitely" beyond the period of employment until the information is no longer deemed confidential. *Id*.

Matheson alleges that, at some point between March 13, 2026, and April 6, 2026, Mr. Miskin exported more than 2,000 "confidential" files to a personal external hard drive. ECF No. 15 ¶ 27. The files included "customer contracts and pricing agreements, detailed financial reports, P&L data, budgets, cost structures, profit margin data, compensation information, and strategic and operational materials" which were, in some cases, stored in "restricted-access systems." *Id*. ¶¶ 28, 29. Matheson asserts Mr. Miskin had no legitimate business reason or authorization to download the records, which Mr. Miskin disputes.

On April 24, 2026, after the file download, Mr. Miskin resigned from Matheson and began working at Maine Oxy. *Id*. ¶ 34. According to the FAC, Mr. Miskin subsequently "solicit[ed]" two Matheson customers on behalf of his new company, *id*. ¶ 45, and he

3

"acquired, retained, disclosed, used, and/or intended to use Matheson's trade secrets and confidential information in furtherance of Maine Oxy's business and for the purpose of benefiting Maine Oxy," *id.* ¶ 54. Mr. Miskin disputes this characterization.

Accordingly, Matheson brings seven counts against Mr. Miskin and Maine Oxy. First, Count I asserts a violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, for improperly retaining and using Matheson's data without its consent. Count II brings the same claim under Maine's trade secrets statute, the Maine Uniform Trade Secrets Act ("MUTSA"), 10 M.R.S. §§ 1541–48. Count III alleges Mr. Miskin breached the 2022 Agreement when he misused confidential proprietary information and engaged in competitive activities in the prohibited geographic regions within twelve months of his termination. Matheson avers that a result of this breach, it has and continues to suffer irreparable harm, including loss of confidential information, competitive disadvantage, and loss of customer relationships. Count IV asserts Mr. Miskin breached the 2010 Agreement for the same reasons as in Count III. Count V asserts Ms. Miskin violated the Code of Conduct by taking the downloaded data with him after he left the company. Count VI alleges Mr. Miskin violated his duty of loyalty to the company "in anticipation of competitive employment or activity adverse to Matheson while still employed by Matheson" when he exported the data. ECF No. 15 ¶ 94. Finally, Count VII asserts the 2022 Agreement agrees to indemnify Matheson for reasonable attorneys' fees and costs "incurred in enforcing the terms of [the] Agreement." *Id.* ¶ 98.

Matheson now moves for injunctive relief on all counts,[2] arguing that it continues to suffer irreparable harm by way of the Defendants' alleged use of its trade secrets. ECF

---

[2] Matheson's counsel clarified at the oral argument that it is not moving for injunctive relief on the noncompete provisions of the 2010 and 2022 Agreements.

No. 20. It seeks an order from this Court requiring Mr. Miskin to return the external hard drive to Matheson and requiring Mr. Miskin to abide by the 2022 Agreement's non-solicitation clause to refrain from "servicing or soliciting" shared customers.

Defendants oppose the motion for injunctive relief for multiple reasons, foremost of which is that they argue Matheson cannot show likelihood of success on the merits because the data was not improperly attained or used. ECF No. 29 at 11–12. Their opposition also attaches three affidavits which directly refute the facts Matheson presents in its FAC: They contend Matheson "encouraged" Mr. Miskin and other employees to back up company documents on external hard drives, and even reimbursed him for doing so, *id.* at 11; Mr. Miskin asserts he did not purposefully keep the hard drive in his possession but rather forgot to return it when he left, Miskin Decl. ¶ 18; Maine Oxy vociferously asserts that it has no knowledge of the hard drive's contents or any trade secrets, and that they did not hire Mr. Miskin to use those secrets, nor did he ever divulge them to the company, ECF No. 29 at 7; they relay to the Court that the hard drive at issue is under lock and key in Defendants' counsel's office, and they are willing to send it to a mutually agreed-upon forensics expert to catalogue the data, *id.*; they deny that Mr. Miskin "solicited" the customers at issue because those companies were already customers of Maine Oxy before Mr. Miskin was hired, *id.* at 3–4; and they note that Mr. Miskin has—since this case was filed—reached an agreement with Matheson that he will not "service" or otherwise interact with shared customers for at least the twelve months after his termination from Matheson, *id.* at 4. By virtue of that agreement, they argue Matheson cannot show irreparable harm that an injunction could address.

5

**ANALYSIS**

Injunctive relief is "an extraordinary remedy which must be granted 'sparingly and only in cases where the need for extraordinary equitable relief is clear and plain.'" *Tirrell v. Edelblut*, 747 F. Supp. 3d 310, 313 (D.N.H. 2024) (quoting *Nw. Bypass Grp. v. U.S. Army Corps of Eng'rs*, 453 F. Supp. 2d 333, 338 (D.N.H. 2006)). In determining whether to grant a TRO or preliminary injunction, the Court considers the same four factors: the movant's likelihood of success on the merits; the likelihood of irreparable harm in the absence of provisional relief; the balance of the equities; and whether injunctive relief is in the public interest. *Aftermarket Auto Parts All., Inc. v. Bumper2Bumper, Inc.*, No. 12-cv-00258, 2012 WL 4753407, at *1 (D. Me. Oct. 4, 2012). While all these factors must be weighed, "the cynosure of this four-part test is more often than not the movant's likelihood of success on the merits." *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 115 (1st Cir. 2006). The party seeking relief bears the burden of demonstrating that these factors weigh in its favor. *See Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003).

## I.    Likelihood of Success on the Merits

The likelihood of success is "the main bearing wall of the four-factor framework." *Corp. Techs., Inc. v. Harnett*, 731 F.3d 6, 10 (1st Cir. 2013) (quotation modified). To meet its burden on this factor, Plaintiff "must establish a strong likelihood that [it] will ultimately prevail." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 10 (1st Cir. 2012) (quotation modified). That being said, at this stage, the Court "need not predict the eventual outcome on the merits with absolute assurance." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 16 (1st Cir. 1996).

## A. **Violation of the 2022 Agreement**

Although Matheson moves for injunctive relief on all of its counts except as to the noncompete provisions of the 2010 and 2022 Agreements, it stated at oral argument—and the Court agrees—that the requested injunctive relief is available, and most appropriately granted, under the 2022 Agreement alone. As relevant here, Matheson asserts that Mr. Miskin violated two provisions of the 2022 Agreement[3]: (1) the clause requiring the return of company documents and property upon termination of employment, ECF No. 15-1 § 3; and (2) the non-solicitation agreement prohibiting "solicit[ing] business from, or attempt[ing] to sell, license or provide the same or similar products or services" to competitors, *id.* § 4(b). Because the record here supports allowing injunctive relief on breach-of-contract grounds without resort to the more fact-intensive trade secrets inquiry, the Court need not and does not address the DTSA or the MUTSA at this stage. *See Progress Eng'g, LLC v. Bennett*, No. 22-cv-00257, 2022 WL 16701324, at *6–8 (D. Me. Nov. 3, 2022) (finding likelihood of success under a breach-of-contract theory sufficient to support injunctive relief, notwithstanding parallel trade secrets claims).

### 1. *Retention Provision*

The parties do not dispute that Mr. Miskin's retention of the hard drive—albeit under lock and key at Defendants' counsel's office—breaches Section 3 of the Agreement. When directly asked at oral argument, Defendants' counsel conceded Mr. Miskin has "no legal basis" to keep the hard drive after his employment terminated. The Court therefore

---

[3] The 2022 Agreement includes a clause establishing a basis for injunctive relief for any breach of the covenants at issue. *See* ECF No. 15-1 § 5.

7

need not resolve the finer points of the clause's language or the Agreement's overall enforceability to conclude that Matheson is likely to prevail on this issue.[4]

Despite conceding the breach, Defendants insist they will return the hard drive only after a mutually agreed-upon computer forensics expert examines the hard drive, and they ask the Court to order as much. The Court declines to do so. The parties remain free to negotiate such an arrangement on their own, but nothing in the record entitles Defendants to condition performance of a contractual obligation on Matheson's acceptance of that condition. Section 3 of the Agreement contains no such condition, and Defendants identify no legal basis—contractual or otherwise—for grafting one onto Mr. Miskin's existing duty to return company property. Permitting Defendants to withhold the hard drive pending a forensic review of their choosing would invite every departing employee to treat company data as their own escrow, retained on terms they alone dictate, rather than returning it promptly to its lawful owner. Whether Mr. Miskin retained the hard drive by mistake or by design, and whatever he may have intended to do with it, are all issues to be debated as the case proceeds; at this stage, the Court finds it appropriate to order its immediate return to Matheson.

### 2. *Non-Solicitation Agreement*

Matheson is similarly likely to prevail on its claim that Mr. Miskin violated the non-solicitation agreement in Sections 4(b) and 4(c) of the 2022 Agreement. When Matheson promoted Mr. Miskin to regional manager in 2022, he agreed not to solicit business from

---

[4] Defendants contend the 2022 Agreement was void at the outset because Matheson did not provide Mr. Miskin three business days' notice in violation of state law. ECF No. 29 at 11; *see* 26 M.R.S. § 599-A(4) ("An employer shall notify an employee or prospective employee of a noncompete agreement requirement and provide a copy of the noncompete agreement not less than 3 business days before the employer requires the agreement to be signed."). Matheson supplies a declaration indicating Mr. Miskin received the Agreement more than three business days before he signed it. Renouf Decl. ¶ 10. The Court need not resolve this dispute now because Defendants have conceded they are in breach of the Agreement.

or "attempt to sell, license or *provide*" the same services to Matheson's customers for one year after termination. ECF No. 15-1 § 4(b) (emphasis added). Defendants do not dispute that Mr. Miskin interacted with three shared customers after beginning work at Maine Oxy, although they steadfastly deny Mr. Miskin "solicited" them as new customers or used the confidential data in his interactions with them. *See* ECF No. 29 at 5–6. Critically, however, Defendants do not dispute that Mr. Miskin "serviced" these customers. Taking the FAC's allegations as true, a reasonable factfinder could conclude that this "servicing" itself constitutes "provid[ing]" industry-related services within the meaning of Section 4(b), thereby breaching the non-solicitation covenant. ECF No. 15-1 § 4(b); *see Progress Eng'g*, 2022 WL 16701324, at *8 ("Based on the record as it now stands, a reasonable fact finder would likely conclude that [defendant] breached a binding non-competition covenant in his employment agreement . . . .") (quotation modified)); ECF No. 15 ¶ 43 (alleging that Mr. Miskin "solicited multiple Matheson customers, including customers with whom he developed relationships on Matheson's behalf and whom he expressly agreed not to solicit under his restrictive covenant obligations to Matheson."). Matheson has therefore shown a likelihood of success on this claim, and the Court finds it reasonable to restrain Mr. Miskin from further breaches.

In sum, the Court finds on this record that Matheson is likely to succeed on its claim that Mr. Miskin breached the 2022 Agreement—both by retaining the hard drive after his resignation and providing services to shared customers.

## II.    Threat of Irreparable Harm

Even if a party is likely to succeed on the merits, the Court may issue an injunction only if there is "a significant risk of irreparable harm if the injunction is withheld." *NuVasive, Inc. v. Day*, 954 F.3d 439, 443 (1st Cir. 2020). In other words, the Plaintiff

must show "a substantial injury that is not accurately measurable or adequately compensable by money damages," *Ross-Simon*, 102 F.3d at 19, "grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store," *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004). Matheson argues it suffers irreparable harm as to loss of confidential information, competitive disadvantage, and loss of customer relationships. Defendants assert Matheson cannot show it will suffer irreparable injury because Mr. Miskin has not solicited and will not solicit Matheson customers, because neither he nor Maine Oxy has used the data, and because the hard drive remains safeguarded at counsel's office.

This Court has previously recognized that allowing a departing employee to retain company property and continue servicing an employer's customers "results in an injury distinct from the mere loss of future revenue to the employee" and is sufficient to demonstrate irreparable injury. *Progress Eng'g*, 2022 WL 16701324, at *9. That reasoning applies with equal force here: once a former employee retains confidential business records and continues interacting with the company's customers in violation of a restrictive covenant, the resulting harm to goodwill and competitive position is not easily undone or measured after the fact. *See Covetrus Inc. v. Taffere*, No. 25-cv-00395, 2025 WL 4481814, at *5 (D. Me. Sept. 3, 2025), *opinion amended and supplemented*, 2025 WL 3496549 (D. Me. Dec. 5, 2025) ("When it comes to the dissemination or misappropriation of trade secrets, there is no readily available means of returning the genie to the bottle, and once released certain resulting harms, including the loss of Plaintiff's goodwill with its clients, may be impossible to remedy."). Here, Mr. Miskin has already "serviced" three of Matheson's clients, and although the record does not establish the full extent of those interactions, this fact supports a finding that Matheson may have

10

already suffered harm to its competitive position—particularly given its assertions that the retained confidential data represents the "crown jewels" of its business strategy. ECF No. 15 ¶ 36. The 2022 Agreement itself anticipates injunctive relief for breaches of Section 4, putting the signatories on notice that such harm is properly enjoined. *See* ECF No. 15-1 § 5. Matheson has therefore demonstrated irreparable harm in the absence of a Court order.

### III.    Balance of Equities

To grant injunctive relief, the Court must find "a balance of equities in the plaintiff's favor." *Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.*, 794 F.3d 168, 171 (1st Cir. 2015). Because the injunction is limited to the retention and non-solicitation clauses and does not touch the noncompete clause, Mr. Miskin remains free to work at Maine Oxy and to service any customers over which Maine Oxy shares no relationship with Matheson. *See Alcom, LLC v. Temple*, No. 20-cv-00152, 2020 WL 2202443, at *10 (D. Me. May 6, 2020) (discussing the harm that might result if a defendant cannot pursue employment in his chosen field). The hardship imposed on Mr. Miskin and Maine Oxy is accordingly minimal relative to Matheson's interest in enforcing the bargain it struck. This conclusion is reinforced by Defendants' own conduct: their "announced conscientiousness" in open court, together with Mr. Miskin's separate agreement with Matheson not to further service shared customers, shows that an injunction would impose no additional hardship beyond what Defendants have already committed to undertake voluntarily. *See Covetrus*, 2025 WL 4481814, at *5. Courts likewise have found no undue hardship where an injunction merely holds a party to conduct already required by a signed non-solicitation agreement and restores the status quo. *See, e.g., Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016)

(finding the balance of equities favored a TRO where the plaintiff sought only to enforce solicitation restrictions already imposed by contract); *Navigant Consulting, Inc. v. Milliman, Inc.*, No. C18-1154, 2018 WL 3751983, at *4 (W.D. Wash. Aug. 8, 2018) (concluding that a plaintiff's interest in protecting proprietary business information outweighed the minimal prejudice to a defendant asked to preserve the status quo).

The balance thus tips in favor of an injunction.

### IV.    Public Interest

"The public interest factor requires this Court to inquire whether there are public interests beyond the private interests of the litigants that would be affected by the issuance or denial of injunctive relief." *Everett J. Prescott, Inc. v. Ross*, 383 F. Supp. 2d 180, 193 (D. Me. 2005). Enforcing a validly executed contractual covenant against retention and solicitation implicates no public interest beyond the litigants' own, and no party has identified one; this factor therefore does not stand in the way of the relief awarded here.

### CONCLUSION

The decision the Court reaches here is not predicated on the merits of Matheson's DTSA and MUTSA trade secrets claims and is decided without prejudice as to the remaining counts (Counts I, II, IV, V, VI, and VII, and Count III to the extent it addresses the 2022 Agreement's noncompete clause).

The Court **GRANTS in part** Matheson's motion for a temporary restraining order and preliminary injunction on Count III. ECF No. 20. The Court **ENJOINS** Defendants from violating the terms of the 2022 Agreement, including the non-solicitation and retention clauses, with the following terms:

- For the period of one year, beginning April 24, 2026, and ending April 24, 2027, Mr. Miskin will not provide any services to shared customers of Matheson and Maine Oxy, nor will he solicit business from, attempt to sell, license, or provide the same or similar products or services to any then-present customers of Matheson.

- Defendants are ordered to return the hard drive to Matheson within seven (7) days of this Order.

- Defendants are enjoined to refrain from accessing, using, copying, disseminating, or making any use of any Matheson digital files and related documents, and to immediately and permanently dispose of and destroy any of the same that might otherwise be in their individual possession. This does not apply to the contents of the hard drive itself which must be returned to Matheson intact and unaltered.

- Defendants are further enjoined to file a declaration within fourteen (14) days of this Order specifying the details of their personal possession and disposition of any of the files and related documents identified in the previous paragraph, including a statement whether the data was disseminated to any other individual or entity and, if so, when and to whom.

The Court **DENIES without prejudice** injunctive relief on all other counts.

**SO ORDERED.**

Dated this 10th day of July, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**
